[Nos. 12573-4-III; 12574-2-III; Division Three. March 31, 1994.]
12575-1-III; 12576-9-III.

THE STATE OF WASHINGTON, *Respondent*, v. JUAN LUIS SANCHEZ, *Appellant*.

James S. Hogan, Jr., for appellant.

Jeffrey C. Sullivan, Prosecuting Attorney, and Bruce Hanify, Deputy, for respondent.

SWEENEY, A.C.J. — On October 18, October 25, November 1 and November 21, 1991, juvenile Juan Luis Sanchez helped break into and hot-wire four vehicles. During the ensuing "joyrides", one of the vehicles was destroyed and others damaged. After his conviction on four counts of taking a motor vehicle without the owner's permission and one count of malicious mischief in the second degree, Mr. Sanchez was ordered to pay restitution to the victim car owners and their insurance carriers. He appeals, contending (1) insurance carriers are not "victims" entitled to restitution under RCW

13.40.190(1), and (2) the court erred in preventing him from presenting evidence of his inability to pay full or partial restitution. We affirm.

## I

The restitution provision of the Juvenile Justice Act of 1977 (RCW 13.40) requires the court to impose restitution on a juvenile offender for losses suffered by "any persons" as a result of the juvenile's offense. RCW 13.40.190(1);[1] *State v. Landrum*, 66 Wn. App. 791, 794, 832 P.2d 1359 (1992). Restitution is defined in former RCW 13.40.020(17) as a "financial reimbursement by the offender to the victim, . . ." including "easily ascertainable damages for injury to or loss of property . . .". Mr. Sanchez's only objection at trial was that insurance companies, as third parties contractually obligated to reimburse their clients for losses, are not "persons" intended to recover under RCW 13.40.190(1).

Neither "person" nor "victim" is defined in RCW 13.40. When a term is not defined in a statute, the court may look to the common law or a dictionary for a useful definition. *Shoreline Comm'ty College Dist. 7 v. Employment Sec. Dep't*, 120 Wn.2d 394, 403, 842 P.2d 938 (1992); *In re Brazier Forest Prods., Inc.*, 106 Wn.2d 588, 595, 724 P.2d 970 (1986); *Key Bank v. Everett*, 67 Wn. App. 914, 918, 841 P.2d 800 (1992), *review denied*, 121 Wn.2d 1025 (1993). At common law, the term "person" includes natural and artificial persons such as corporations. *Brazier*, at 595. The word "victim" is defined as a

[p]erson who [the] court determines has suffered pecuniary damages as [a] result of [the] defendant's criminal activities;

---

[1]RCW 13.40.190(1) provides, in part:

"In its dispositional order, the court shall require the respondent to make restitution to any persons who have suffered loss or damage as a result of the offense committed by the respondent. . . . The payment of restitution shall be in addition to any punishment which is imposed pursuant to the other provisions of this chapter. The court may determine the amount, terms, and conditions of the restitution. . . . . The court may not require the respondent to pay full or partial restitution if the respondent reasonably satisfies the court that he or she does not have the means to make full or partial restitution and could not reasonably acquire the means to pay such restitution."

that person may be [an] individual, public or private corporation, government, partnership, or unincorporated association.

Black's Law Dictionary 1567 (6th ed. 1990). Both at common law and in legal parlance, "person" and "victim" may mean an artificial person such as an insurance company.

 Statutes should be construed to effect their legislative purpose. *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990). The underlying purposes of the juvenile justice act's restitution provisions are victim compensation and juvenile accountability. *State v. Bennett*, 63 Wn. App. 530, 533, 821 P.2d 499 (1991). "Restitution primarily serves the goal of rehabilitation." *Bennett*, at 533. To that end, the restitution provisions of the juvenile justice act should be liberally construed in favor of imposing restitution. *Landrum*, at 795.

Washington courts have extended restitution to recipients other than the immediate victims of adult crimes. *State v. Davison*, 116 Wn.2d 917, 921, 809 P.2d 1374 (1991) (restitution to the City of Seattle for wages paid while a victim of assault was unable to work). *See, e.g., State v. Barr*, 99 Wn.2d 75, 658 P.2d 1247 (1983) (restitution to widow and child of victim of negligent homicide); *State v. Jeffries*, 42 Wn. App. 142, 709 P.2d 819 (1985) (reimbursement to Department of Labor and Industries for payment of disability and medical expenses of assault victim). Included in these secondary victims are insurance companies. *Davison*, at 921; *State v. Barnett*, 36 Wn. App. 560, 675 P.2d 626, *review denied*, 101 Wn.2d 1011 (1984). Although both *Barnett* and *Davison* are adult criminal restitution cases, the language and interpretation of their respective statutes are instructive.

Noting that corporations are persons for the purpose of the adult suspended sentence statute (RCW 9A.04.110(17); RCW 9.92.060), the *Barnett* court concluded

that insurance companies are damaged when they are required to pay claims because of crimes such as burglary. Further, insurance companies which pay claims to an insured because of

loss suffered from burglary or theft can be said to have suffered a loss under the principles of subrogation.

*Barnett*, at 562. The court found that restitution made to a victim's insurer serves the goals of protection for society, deterrence and rehabilitation. *Barnett*, at 563.

RCW 9.94A.142, the sentencing reform act provision authorizing restitution for "injury to any person or damage to or loss of property", was examined in *Davison*, at 920-23. Our Supreme Court found that the City of Seattle was a "victim" (defined there as "any person who has sustained physical or financial injury to person or property as a direct result of the crime charged", former RCW 9.94A.030(28))[2] when it was obliged to pay wages to an assault victim who was unable to work. *Davison*, at 921. The court declined to give the statute an overly technical construction which would allow the defendant to escape the consequences of his actions. *Davison*, at 922.

■ Just as the purpose of the Sentencing Reform Act of 1981 is to "[p]romote respect for the law by providing punishment which is just", RCW 9.94A.010(2), the Juvenile Justice Act of 1977 has as one purpose that juvenile offenders "be held accountable for their offenses . . .". RCW 13.40.010(2). Restitution to insurance companies required to pay damages for crimes committed by juveniles serves that purpose.

## II

The restitution provision of the juvenile justice act requires the court to order restitution except in those cases wherein "the respondent reasonably satisfies the court that he or she does not have the means to make full or partial restitution and could not reasonably acquire the means to pay restitution". RCW 13.40.190(1). Mr. Sanchez contends this provision requires the court to, in effect, hold an inquiry into his ability to pay.

■ The authority is to the contrary. The burden of establishing an inability to pay rests with the juvenile defendant. *See, e.g., State v. Fellers*, 37 Wn. App. 613, 683 P.2d 209 (1984);

---

[2]The current definition of victim has been expanded to include persons who have sustained emotional and psychological injury. RCW 9.94A.030(33).

*In re Erickson,* 24 Wn. App. 808, 604 P.2d 513 (1979), *review denied,* 93 Wn.2d 1017 (1980). In *Fellers,* Division One stated that a juvenile defendant has a right to be heard on the issue of whether he or she has the ability to pay, *when requested. Fellers,* at 620. Citing RCW 13.40.190(1), the appellant in *Erickson* argued she could not pay restitution because she was virtually unemployable at the age of 13. Division Two concluded that because this issue had not been argued at the trial court, it had been waived. *Erickson,* at 811.

More recently, in *Bennett* the court found that formal findings of fact regarding a juvenile defendant's ability to pay restitution were not required because "adequate procedural safeguards" protected his or her constitutional interests. *Bennett,* at 534. These safeguards include the defendant's right to present a claim to the court that he or she lacks the present and future ability to pay restitution, as well as the statutory option to modify the restitution order. *Bennett,* at 534-35; RCW 13.40.190(3). Moreover, no sanctions may be imposed unless the defendant willfully refuses to comply with the order. *Bennett,* at 535; RCW 13.40.200(1)-(3).

Mr. Sanchez offered no evidence nor did he claim, at the trial court, he was unable to pay restitution. After agreeing to restitution for the out-of-pocket expenses of the victims, Mr. Sanchez's attorney merely stated, "To ask this young man to be responsible for anything over and above that is not realistic, and I don't think it's legal to require him to be even partially indebted to [the insurance companies]". The statement does not rise to the level of a request to consider Mr. Sanchez's ability to pay, and the trial court was not required to raise the issue sua sponte.

Affirmed.

MUNSON and SCHULTHEIS, JJ., concur.