**FILED**
**FEBRUARY 18, 2025**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40026-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANGELA KATHERINE CAMP, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Angela Camp appeals her convictions for attempting to elude a police vehicle and driving under the influence (DUI). She argues her counsel was ineffective for failing to object to certain evidence and her legal financial obligations (LFOs) were wrongly imposed. We reject her ineffective assistance of counsel claim and conclude that invited error warrants not reviewing most of her LFOs. We affirm her convictions and all but $325.48 of her LFOs.

FACTS

Corporal Mark Ward of the Wenatchee Police Department saw a sport utility vehicle (SUV) parked oddly one night. When he approached the SUV, it sped away and briefly drove in the oncoming lane. He pursued it long enough to provide police dispatch

with the license plate number.  Dispatch advised Corporal Ward that Angela Camp was the registered owner of the SUV.

A few minutes later, Deputy Jordan Kynaston saw an SUV with the same license plate driving dangerously.  About five minutes later, Deputy Kynaston found the SUV parked behind a bar in Cashmere, Washington.  Soon after, Ms. Camp left the bar and told the deputy that the SUV was hers.  Bar staff and police both noted that Ms. Camp was obviously intoxicated.  She smelled of alcohol, had bloodshot eyes, and was uneasy on her feet.  She was detained and the SUV's keys were found on her.

Deputy Kynaston reviewed security footage from a nearby store that matched the timeline in which he saw Ms. Camp's SUV.  The footage showed a woman holding the same items later found on Ms. Camp, getting out of the SUV and walking toward the bar. After Corporal Ward transported Ms. Camp to the Chelan County jail, he observed the blood draw from Ms. Camp.  Blood analysis showed a blood alcohol concentration of 0.20.

At trial, Corporal Ward testified that dispatch told him that Ms. Camp was the registered owner of the SUV.  Deputy Kynaston also testified about reviewing the surveillance footage.  The paramedic who performed the blood draw, the forensic toxicologist who analyzed the blood sample, and Corporal Ward each testified about the general process by which a blood sample is taken and tested in a DUI investigation.

2

They did not, however, explicitly state that each step of that procedure was followed with respect to Ms. Camp's blood sample.

The jury found Ms. Camp guilty of attempting to elude a police vehicle and DUI. As part of her sentence, Ms. Camp was ordered to pay $1,245.50 in court costs and $325.48 for "WPD DUI cost recovery," listed as an item of restitution. Clerk's Papers (CP) at 68. Ms. Camp's trial counsel told the trial court that $1,245.50 was the "mandatory minimum" fee in a DUI case. Rep. of Proc. (Oct. 4, 2023) (RP) at 254. The court found Ms. Camp indigent.

## ANALYSIS

### INEFFECTIVE ASSISTANCE OF COUNSEL

Ms. Camp asserts she received ineffective assistance of counsel when her trial counsel failed to object to three pieces of evidence: (1) testimony relating to the surveillance video not in evidence, claimed to violate the best evidence rule, ER 1002; (2) testimony by Corporal Ward that Ms. Camp was the registered owner of the SUV, claimed to be two layers of inadmissible hearsay, ER 802, 805; and (3) admission of Ms. Camp's blood test results, claimed insufficient chain of custody established,[1] ER 901.

---

[1] Ms. Camp's argument on the blood sample relies heavily on two cases: *State v. Russell*, No. 26789-0-III, 2011 WL 1238303 (Wash. Ct. App. Apr. 5, 2011) and *State v. Zanghi*, No. 30921-1-II, 2005 WL 895812 (Wash. Ct. App. Apr. 19, 2005). Although GR 14.1(a) allows parties to cite unpublished opinions as persuasive authority, this

For the reasons below, we reject Ms. Camp's ineffective assistance of counsel claim.

An ineffective assistance of counsel claim requires Ms. Camp to show that (1) her trial counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, except for the counsel's unprofessional errors, the result of the proceeding would have been different. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 672-73, 101 P.3d 1 (2004). A reasonable probability is one "'sufficient to undermine confidence in the outcome.'" *Id.* at 673 (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). We strongly presume defense counsel's performance was reasonable. *State v. Brockob*, 159 Wn.2d 311, 345, 150 P.3d 59 (2006). "[A] criminal defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

One legitimate reason not to object to potentially inadmissible evidence is to avoid emphasizing it if the inadmissibility is readily cured. If Ms. Camp had objected to the surveillance video testimony, the State may have admitted the video itself, which could have been more damaging. If Ms. Camp had objected to the vehicle registration

generally only applies to opinions *filed on or after March 1, 2013*. Both *Russell* and *Zanghi*, along with other unpublished opinions cited by Ms. Camp, were decided before March 1, 2013.

testimony, the State may have admitted the vehicle registration information itself, emphasizing it to the jury. If Ms. Camp had objected to the blood draw testimony, the State could have cured it by simply asking those witnesses whether they followed the usual procedures in this case. Ms. Camp's trial counsel could reasonably have believed that all this evidence would have made it in whether he objected or not, and strategically chose not to emphasize it to the jury. That his tactic was ultimately unsuccessful does not make it unreasonable or illegitimate. Ms. Camp thus fails on the first prong of her ineffective assistance of counsel claim.

Even without the challenged evidence, the State presented enough evidence for the jury to convict. A version of the facts that does not include any challenged evidence could proceed as follows: Corporal Ward watched an SUV accelerate quickly away from him and swerve briefly into an oncoming lane. He reported the license plate before discontinuing the chase. A few minutes later, Deputy Kynaston saw an SUV with the same license plate. About five minutes after that, Deputy Kynaston saw the SUV parked behind a bar in Cashmere. Ms. Camp left the bar shortly thereafter, acknowledged the SUV was hers, and had the SUV's keys on her person. When Corporal Ward arrived on the scene shortly after that, he noted that it was the same SUV he had seen before. Officers on the scene noted that Ms. Camp had an obvious odor of alcohol coming from her, bloodshot eyes, and poor coordination.

These facts would have presented the jury with enough evidence to convict Ms. Camp of both charges. Ms. Camp fails to show there is a reasonable probability that the result of the proceeding would have been different absent the challenged evidence. We conclude that Ms. Camp fails to establish either prong of ineffective assistance of counsel.

LFOs

Appellate courts typically review claims that LFOs were improperly imposed even though no objection was raised to the trial court. Nevertheless, there are times when review is not warranted.

The invited error doctrine applies where a defendant engaged in some affirmative action by which they set up the error. *State v. Phelps*, 113 Wn. App. 347, 353, 57 P.3d 624 (2002). Here, Ms. Camp's counsel described the $1,245.50 as the "mandatory minimum" fee in a DUI case. RP at 254. Due to invited error, we decline to review Ms. Camp's LFO claim to this extent.

The remaining LFO, $325.48, was "restitution" to the Wenatchee Police Department DUI cost recovery program. CP at 68. We question whether an item of general restitution is imposable. *See* RCW 10.01.160(2) ("Costs . . . cannot include . . . expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law."). Here, the

No. 40026-3-III
*State v. Camp*

Department's cost would have been incurred even had Ms. Camp not been arrested for DUI. But even if the cost was imposable, the trial court found Ms. Camp indigent and the cost should not have been imposed. RCW 10.01.160(3).

Affirmed, but remanded to strike $325.48 cost.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

WE CONCUR:

_Cooney_
Cooney, J.

_Murphy_
Murphy, J.

7